148 T.C. No. 12

UNITED STATES TAX COURT

WHISTLEBLOWER 16158-14W, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 16158-14W.                         Filed April 17, 2017.

W provided information to the Internal Revenue Service (IRS) regarding T's alleged failure to withhold and pay over taxes for 2006 through 2008. W supplemented the submission to add years 2009 through 2014. The IRS expanded an ongoing examination for 2006 through 2008 to address the withholding issue that W raised, but that examination did not result in collected proceeds. The IRS did not conduct an examination relating to the withholding issue for subsequent years. T updated its recordkeeping system after 2008. W alleges that improvements to T's recordkeeping resulted in collected proceeds and that the Secretary must pay an award.

<u>Held</u>: Because there were no collected proceeds for 2006 through 2008, W is not entitled to an award for those years.

<u>Held</u>, <u>further</u>, there was no administrative or judicial action with respect to years after 2008 because the IRS took no action with respect to those years.

_Held, further_, the Commissioner is not required to monitor a taxpayer's voluntary change in reporting for years for which there was no action.

Sealed, for petitioner.

Sealed, for respondent.

OPINION

BUCH, Judge: The whistleblower timely petitioned upon receiving a determination letter from the Internal Revenue Service (IRS) Whistleblower Office (Whistleblower Office) denying an award. On April 24, 2015, the Commissioner filed a motion for summary judgment arguing that he is entitled to judgment as a matter of law because the information provided by the whistleblower did not lead to the collection of any proceeds and therefore the whistleblower is not entitled to an award. The whistleblower filed a response primarily arguing that there is a genuine dispute of material fact because, the whistleblower contends, the information provided caused the taxpayer to change its reporting for years after the Commissioner's examination and further arguing that the change in reporting led the Commissioner to collect additional taxes that

should be considered "collected proceeds" under section 7623(b)(1).[1]  We held a hearing on the motion, and we ordered briefs.  After reviewing the parties' arguments, we will grant the Commissioner's motion because, accepting the whistleblower's factual allegations as true, any revenue from the taxpayer's subsequent change in reporting does not meet the definition of collected proceeds for the years that were the subject of the action by the Commissioner.

Background

In late January 2009 the whistleblower filed a Form 211, Application for Award for Original Information, with the Commissioner.  On the Form 211 the whistleblower claimed to have information on a corporation (taxpayer) that had failed to withhold taxes for 2006, 2007, and 2008 on payments of interest and dividends that it had made to foreign persons.  The whistleblower stated on the Form 211 that the whistleblower knew the information because the whistleblower was an employee of the taxpayer.

The Whistleblower Office reviewed the information provided on the Form 211 and provided the information to other business divisions within the IRS, including the Criminal Investigation Division and the Large Business and

---

[1]Unless otherwise indicated, all section references are to the Internal Revenue Code in effect at all relevant times, and all Rule references are to the Tax Court Rules of Practice and Procedure.

International Division (LB&I). Upon receiving this information LB&I expanded an ongoing audit that was unrelated to the whistleblower's allegations. At the end of the audit LB&I issued a "no change" letter to the taxpayer, informing it that the audit did not result in any adjustments.

Subsequently, the LB&I auditor and the Whistleblower Office filled out and signed a Form 11369, Confidential Evaluation Report on Claim for Award. The explanation attached to the Form 11369 stated that the whistleblower was correct that the taxpayer had made errors but the cause of the errors was an "honest mistake" made while updating its reporting systems. The explanation went on to say that "[i]t appears the * * * [taxpayer] has been convinced by its close call to become fully compliant with its withholding tax responsibilities and further examination is not warranted."

The whistleblower supplemented the whistleblower's submissions between 2010 and 2014 relating to years after 2008. However, the Commissioner did not examine any additional years on the basis of the whistleblower's submissions.

On June 12, 2014, the Whistleblower Office sent a letter to the whistleblower notifying the whistleblower that the whistleblower was not entitled to an award because the information provided "did not result in the collection of any proceeds."

The Commissioner filed a motion for summary judgment. He argues that there were no collected proceeds for 2006 to 2008 nor any action for the later years and therefore he is entitled to summary judgment.

Discussion

The purpose of summary judgment is to avoid unnecessary and expensive trials. Fla. Peach Corp. v. Commissioner, 90 T.C. 678, 681 (1988). However, summary judgment is not a substitute for trial, and it should not be invoked in proceedings where the parties disagree as to material facts. Shiosaki v. Commissioner, 61 T.C. 861, 862 (1974). Summary judgment may be granted "if the pleadings, answers to interrogatories, depositions, admissions, and any other acceptable materials, together with the affidavits or declarations, if any, show that there is no genuine dispute as to any material fact and that a decision may be rendered as a matter of law." Rule 121(b).

The party moving for summary judgment bears the burden of demonstrating that a genuine dispute does not exist as to any material fact and that he is entitled to judgment as a matter of law. Sundstrand Corp. v. Commissioner, 98 T.C. 518, 520 (1992), aff'd, 17 F.3d 965 (7th Cir. 1994). Because the moving party bears this burden, any factual inferences will be treated in a manner that is most favorable to the nonmoving party. Dahlstrom v. Commissioner, 85 T.C. 812, 821

(1985).  While the burden falls on the moving party, the nonmoving party "may not rest upon the mere allegations or denials of such party's pleading, but such party's response * * * must set forth specific facts showing that there is a genuine dispute for trial."  Rule 121(d).

There are no material facts in dispute in this case, and a decision may be rendered as a matter of law.  The dispute centers around whether the amount of collected proceeds as provided in section 7623(b) can include amounts collected for years after examination years because of a taxpayer's change in reporting. Therefore, summary judgment is appropriate.

I.      Section 7623 Requires Both an Action and Collected Proceeds.

Before 2006 section 7623 authorized the Secretary to "pay such sums as he deems necessary for--(1) detecting underpayments of tax, and (2) detecting and bringing to trial and punishment persons guilty of violating the internal revenue laws or conniving at the same".  Congress amended the statute by the Tax Relief and Health Care Act of 2006, Pub. L. No. 109-432, div. A, sec. 406(a), 120 Stat. at 2958-2959.  Under the amendment, what had been section 7623 became section 7623(a), and Congress added new subsections.  Id.  Section 7623(b)(1) provides:

> If the Secretary proceeds with any administrative or judicial action
> described in subsection (a) based on information brought to the
> Secretary's attention by an individual, such individual shall, subject

to paragraph (2), receive as an award at least 15 percent but not more than 30 percent of the collected proceeds (including penalties, interest, additions to tax, and additional amounts) resulting from the action (including any related actions) or from any settlement in response to such action. * * *

We have described section 7623(b)(1) as "straightforward" and "written in expansive terms". Whistleblower 21276-13W v. Commissioner, 147 T.C. __ , __ (slip op. at 10-11) (Aug. 3, 2016).

The parties dispute whether the whistleblower is entitled to an award. The Commissioner argues that the whistleblower is not because there was no action taken for years after 2008. The whistleblower argues that the Commissioner collected proceeds because the taxpayer began proper reporting and withholding for the years after the examination years, which can be attributed back to the years for which there was an action.

II.     The Secretary Must Take an Administrative or Judicial Action.

An award under section 7623(b)(1) is predicated in part on the Secretary's proceeding with "any administrative or judicial action described in subsection (a)". In this case there is no dispute that the Commissioner took an administrative action with respect to the taxpayer's 2006 through 2008 years. The Commissioner expanded an ongoing examination to include the withholding tax issue. This is clearly a civil proceeding by the Commissioner that may result in collected

proceeds. But the Commissioner took no administrative or judicial action with respect to years after 2008, the years for which the whistleblower seeks an award. The Whistleblower Office explained in the Form 11369 after completing the 2006 through 2008 examination that "any further examination is not warranted." The mere fact that the taxpayer filed an original return is not a civil proceeding by the Commissioner. Thus, there is no administrative or judicial action from which an award can be paid.

But this is not the end of our inquiry. The parties dispute whether amounts collected for the years after the examination years can be taken into account when determining collected proceeds for the actions taken with respect to 2006 through 2008. The Commissioner states that amounts collected for years after the examination years are not collected proceeds because the Commissioner has not taken an action. The whistleblower argues that the amounts collected for 2009 through 2012 are collected proceeds and should relate back to the examination for the 2006 through 2008 years. Thus, we need to decide whether there were any collected proceeds for the years after the examination years that should have been taken into account for an award for the actions that occurred for the tax years 2006 through 2008.

III.    The Award Must Be Based on Collected Proceeds.

Section 7623(b)(1) provides that a whistleblower will "receive as an award at least 15 percent but not more than 30 percent of the collected proceeds (including penalties, interest, additions to tax, and additional amounts)". Therefore, an award is predicated on the collection of proceeds. "Collected proceeds" is not defined in the statute. In Whistleblower 21276-13W v. Commissioner, 147 T.C. at __ (slip op. at 11-12), we relied on the canons of statutory construction to define collected proceeds. We defined it as "all proceeds collected by the Government from the taxpayer". Id. at __ (slip op. at 32). We explained that "collected proceeds" is an "expansive and general term" a "sweeping term", id. at __ (slip op. at 14), and "not limited to amounts assessed and collected under title 26", id. at __ (slip op. at 23).

A.    Collected Proceeds Do Not Include Amounts Collected for Years After Examination Years Because of a Change in Reporting.

The parties dispute whether collected proceeds include amounts collected for the years after examination years because of a taxpayer's voluntarily changing its reporting. The whistleblower observes that the whistleblower provided information to the Commissioner which led to an expansion of an examination to include information reporting. The whistleblower further argues that this

expansion caused the taxpayer to change its reporting and begin properly reporting and withholding after a decade of improper reporting. Thus, under the position taken by the whistleblower, any initial action requires the Commissioner to track changes in a taxpayer's reporting on that issue because any change in reporting may result in collected proceeds. The Commissioner argues that collected proceeds do not include additional amounts collected as a result of the taxpayer's voluntary compliance.

The whistleblower argues that the Commissioner should not limit collected proceeds to the year of the action and looks to final regulations, which the parties agree do not apply in this case, for support. The whistleblower argues that section 301.7623-4(b), Proced. & Admin. Regs. (Aug. 12, 2014), demonstrates that collected proceeds include additional amounts collected after an examination because of a change in reporting. But that regulation does not define collected proceeds; that regulation relates to the factors to be taken into account when determining the award percentage. The regulation provides:

> (b) Factors used to determine award percentage.--(1) Positive factors.--The application of the following non-exclusive factors may support increasing an award percentage under paragraphs (c)(1) or (2) of this section--

> \* \* \* \* \* \* \*

(viii) The information provided had an impact on the behavior of the taxpayer, for example by causing the taxpayer to promptly correct a previously-reported improper position.

In contrast, section 301.7623-2(d)(1), Proced. & Admin. Regs. (Aug. 12, 2014) defines collected proceeds. That regulation provides that collected proceeds include

Tax, penalties, interest, additions to tax, and additional amounts collected because of the information provided; amounts collected prior to receipt of the information if the information provided results in the denial of a claim for refund that otherwise would have been paid; and a reduction of an overpayment credit balance used to satisfy a tax liability incurred because of the information provided. * * *

That regulation also includes a provision allowing for monitoring "post-determination proceeds". See id. subpara. (5)(ii). Specifically, that regulation provides:

If, based on all information known with respect to the taxpayer's account as of the date of the computation described in paragraph (d)(5)(i) of this section, there is a possibility that the IRS may collect additional proceeds, then the Whistleblower Office will continue to monitor the case. If the Whistleblower Office identifies additional collected proceeds, then the IRS will compute and pay accordingly.

The preamble to the final regulation explained this rule in detail. In part, the Department of the Treasury (Treasury) wrote: "These final regulations provide that the Whistleblower Office will monitor the relevant taxpayer account or accounts until the IRS receives collected proceeds as a result of a reduction in the

tax attribute, or the taxpayer's ability to apply the tax attribute expires unused."

T.D. 9687, 2014-36 I.R.B. 486, 495. In other words, the IRS will look to a tax

attribute that has been adjusted for a year that was the subject of the action, and if

there is an effect for other years, the IRS will consider the ongoing effect of that

tax attribute in determining the amount of collected proceeds. Treasury even

cautioned:

> The adoption of a monitoring approach in the final regulations, however, is only intended to explicitly enable the IRS to make an additional award payment when a tax attribute produces collected proceeds after an award has been determined, as described in the preceding paragraphs. * * * In other words, monitoring does not alter the general rule that no award will be paid until there has been a final determination of tax, as defined in the final regulations.

Id.

The whistleblower misses this important distinction. The final regulations

allow the IRS to monitor a taxpayer's reporting of tax attributes that arise for the

years that were the subject of the examination. See sec. 301.7623-2(d)(5)(ii),

Proced. & Admin. Regs.; see also T.D. 9687, 2014-36 I.R.B. at 495. On the basis

of the tax effect of those attributes, the IRS may adjust an award (upward or

downward). See T.D. 9687, 2014-36 I.R.B. at 495. One example is the reduction

of a net operating loss (NOL) carryforward because of the whistleblower's

information; the whistleblower may receive a percentage of the collected proceeds

resulting from the portion of the NOL deduction that is disallowed for the carryforward years.  See id.  Similarly, if the whistleblower's information led to the disallowance of an expense deduction for a piece of equipment that should have been capitalized and depreciated, the future allowance of depreciation deductions could reduce the amount of collected proceeds that might have otherwise arisen from the mere disallowance of the expense deduction, standing alone.  See id.

Neither of these examples (adapted from the preamble to the final regulations, id.), suggests that the IRS would monitor for a change in reporting. Both address situations in which adjustments to tax attributes made in the year of the action have direct carryover consequences for other years.

Collected proceeds do not include self-reported amounts collected when a taxpayer changes its reporting for years that are not part of the action.  The Commissioner argues, and we agree, that because of the significant costs and heavy administrative burden, collected proceeds cannot include amounts collected for years after examination years on account of a taxpayer's changing its reporting. Petitioner takes the definition of "collected proceeds" as "all proceeds collected by the Government from the taxpayer", Whistleblower 21276-13W v. Commissioner, 147 T.C. at __ (slip op. at 32), to an irrational extreme to argue that self-assessed

amounts collected for future years are proceeds collected by the Government.

Indeed, many, if not all, of the Commissioner's examinations will have some

influence on a taxpayer's reporting. However, any determination of an award

based on additional amounts collected for years following examination years

would be based on speculation.

The whistleblower argues that the determination of amounts collected for

years after examination years on account of a change in reporting is not too

speculative in this case. The whistleblower contends that the Commissioner

would be able to determine with reasonable certainty[2] that the 2006 to 2008

examination had caused the taxpayer to change its reporting after the examination

by simply comparing the taxpayer's history of noncompliance with the period

when the taxpayer came into compliance. The whistleblower asks us to define

collected proceeds to include amounts collected after examination years if they are

"reasonably determinable". The Commissioner counters that any attempt to

determine the amount of the award would require another action (e.g., an

_____

[2]The whistleblower's argument incorporates the statement from the
preamble to the final regulations, which explains that collected proceeds do not
include amounts collected for subsequent years because "the IRS would have no
way to determine with any reasonable certainty what the taxpayer's reporting
position would have been if not for the underlying action and whether the
taxpayer's compliance was a direct result of the underlying action." T.D. 9687,
2014-36 I.R.B. 486, 496.

examination) by the Commissioner, and the Court cannot require the Commissioner to take an action. We agree with the Commissioner. And as we have previously held: "Congress did not authorize the Court to direct the Secretary to proceed with an administrative or judicial action." Cooper v. Commissioner, 136 T.C. 597, 600 (2011); see also Cohen v. Commissioner, 139 T.C. 299, 302 (2012), aff'd, 550 F. App'x 10 (D.C. Cir. 2014).

B.      The Whistleblower's Additional Arguments Are Unconvincing.

The whistleblower advances various other arguments that are all tied together using the common "change in behavior" thread.

1.      Amounts Paid Through Voluntary Compliance for Subsequent Years Are Not "Additional Amounts".

The whistleblower argues that a genuine dispute of material fact remains as to whether amounts paid for subsequent years are "additional amounts" as used in section 7623(b)(1) and includable in collected proceeds. In Whistleblower 22716-13W v. Commissioner, 146 T.C. 84, 95 (2016), we held that the term "additional amounts" as used in section 7623(b)(5)(B), the threshold requirements for a whistleblower award, has a technical meaning. We explained that "additional amounts" when used in a series that includes the words "tax" and either "additions to tax" or "additions to the tax" means civil penalties set forth in chapter 68,

subchapter A, of the Internal Revenue Code. Id. at 93-94. Accordingly, "additional amounts" as used in section 7623(b)(1) has a technical meaning, and the whistleblower has not set forth any specific facts to show that the taxpayer paid additional amounts for later years.

>    2.    Voluntary Compliance for Subsequent Years Is Not a "Related Action".

The whistleblower also argues that the whistleblower is entitled to an award because the subsequent years were a "related action" and the Commissioner collected additional taxes because of the taxpayer's change in reporting. The whistleblower relies on the Internal Revenue Manual (IRM) pt. 25.2.2.2 (June 18, 2010) for support. The IRM states that "[g]enerally a related action is [(i)]any action involving the taxpayer from the original action and that is based on, either directly or indirectly, the same information on which the original action is based". Id. pt. 25.2.2.2(8). The whistleblower summarizes the Commissioner's position in the IRM as "same fact pattern but different years" and argues that the taxpayer continued to make the same errors for at least some of its subsequent years before changing its reporting.

The whistleblower seeks to use the concept of a related action to merge the years with respect to which the Commissioner took an action with the subsequent

years.  We have explained that "any related action" is also a "broad and sweeping term[]".  <u>Whistleblower 21276-13W v. Commissioner</u>, 147 T.C. at __ (slip op. at 14).  However, the whistleblower overlooks that a related action requires the Secretary to take a subsequent action.  Specifically, the IRM refers to "any action involving the taxpayer from the original action".  IRM pt. 25.2.2.2(8).  The Commissioner clearly contemplated that there be two actions:  an original action and a subsequent action.  And as explained above, the Commissioner did not take an action for the later years.  The Commissioner did not conduct a civil or criminal proceeding that may result in collected proceeds, and there is no suggestion of any judicial action.  Although the Commissioner took an action with respect to the taxpayer's 2006 to 2008 years, he did not take a subsequent action.  There simply is no subsequent action.

3.     <u>The Whistleblower Offered No Evidence of an Implied<br>Settlement</u>.

Finally, the whistleblower argues that a genuine issue of material fact remains regarding whether the Commissioner collected proceeds pursuant to an "implied settlement".  The whistleblower's position is that the Commissioner's auditor's statement in the explanation attached to the Form 11369 that "[i]t appears the * * * [taxpayer] has been convinced by its close call to become fully

compliant with its withholding tax responsibilities and further examination is not warranted" implies an underlying agreement that the Commissioner will not conduct an examination for subsequent years so long as the taxpayer changes its reporting.

Section 7623(b)(1) allows for whistleblower awards resulting "from any settlement in response to such action."  The term "settlement" is not defined in the Internal Revenue Code.  However, because a settlement is a contract, we look to contract law principles to determine whether a settlement has been reached.  Dorchester Indus. Inc. v. Commissioner, 108 T.C. 320, 330 (1997), aff'd, 208 F.3d 205 (3d Cir. 2000).  "A prerequisite to the formation of a contract is an objective manifestation of mutual assent to its essential terms" and generally, mutual assent "requires an offer and an acceptance."  Id.  And a settlement agreement may be reached even in the "absence of a writing."  Lamborn v. Commissioner, T.C. Memo. 1994-515, 1994 Tax Ct. Memo LEXIS 523, at *14.

The whistleblower has not set forth any specific facts showing that the taxpayer and the Commissioner entered into a settlement agreement or had any intention to enter into such an agreement.  There is nothing more than the whistleblower's speculation that the statement in the explanation attached to the Form 11369 is something more than the auditor's opinion.  This alone does not

rise to the level of mutual assent.  Mere speculative suggestions and conclusory assertions do not give rise to sufficient facts to deny a motion for summary judgment.  Daniels v. Commissioner, T.C. Memo. 1994-591, 1994 Tax Ct. Memo LEXIS 599, at *47; see also Rule 121(d); Rauenhorst v. Commissioner, 119 T.C. 157, 175 (2002).  Accordingly, we conclude that the whistleblower has not offered any facts to indicate that a settlement existed.  Further, even if a settlement had existed, in keeping with our previous discussion, a change in reporting does not give rise to "collected proceeds".

IV.    Conclusion

The whistleblower has not provided any evidence of a genuine dispute as to any material fact.  The whistleblower's argument that the taxpayer's change in reporting could result in "collected proceeds" is not supported by the statute. Accordingly, we will grant the Commissioner's motion for summary judgment.

To reflect the foregoing,

An appropriate order and decision

will be entered.